### DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

#### OF THE

## STATE OF NEW JERSEY.

## NOVEMBER TERM, 1885.

---

### MOSES FOX v. CORNELIUS J. CRONAN.

47 493
57 487
47 493
62 582

1. By virtue of an execution or attachment against a mortgagor, his right, title and interest in mortgaged chattels in possession of the mortgagee may be levied upon, but they cannot be taken by the officer from the possession of the mortgagee without an offer to pay the mortgage debt.

2. Under such levy the officer may advertise the interest of the mortgagor for sale, and on the day of sale he may require the mortgagee to expose the property to the view of bidders, and enforce obedience to that duty on the part of the mortgagee by virtue of his writ.

3. If a sheriff with notice of the mortgagee's claim attaches the entire mortgaged property, and not the interest alone of the mortgagor, and takes it from the possession of the mortgagee, and it is subsequently sold by the auditor in attachment, the sheriff is liable to the mortgagee for the mortgage debt.

---

In error to the Supreme Court.

493

For the plaintiff in error, *Flavel McGee.*

Under the facts of the case I contend that the transfer of the cattle to Fox was an absolute transfer, and not a conditional one or by way of mortgage, and as we are not concluded on that point in this court I make the following suggestions on that question : The consideration was sufficient, being for an antecedent debt greater in amount than the value of the cattle. The transfer of possession was complete. There was no equity of redemption provided for, either by the paper itself or by the conversation between the parties. Their agreement was that Fox should take the cattle ; that he should sell them ; that he should keep of the proceeds enough to pay his debt, and turn over the balance only. The sale was not conditional ; the sale was absolute. The price only was conditional. The property, and the whole property, was transferred to Fox. He was to keep all of the proceeds, if necessary, to pay his debt. He was only to return to Blumenthal any excess which might be realized on the sale.

This, I submit, constituted a sale and not a pledge.

On the facts proven in the case, and epitomized above, I respectfully submit that the judgment of non-suit ought to be reversed for the following reasons :

I. The rejection of the evidence relating to the sale of the cattle and distribution of the proceeds was error.

The offer was to prove that the auditor sold the cattle and delivered them bodily to the purchaser ; that he sold all of them to purchasers at the auction, who carried them away bodily.

That what he sold was not an interest in the cattle which might remain in Blumenthal after the payment of any lien against them which Fox might have, but the cattle themselves, and that Fox never received back either the cattle themselves or any part of the proceeds.

The rejected evidence was to the same effect.

The judge ruled that it was immaterial what the auditor

did with the property after it came into his hands, in this suit, as affecting the sheriff one way or the other.

The testimony was legal and material. The rejection and ruling were both error.

My contention is that whatever may have been the *status* of the sheriff so far forth as his levy and seizure are concerned, it was his duty under the levy to see to it that no substantial injury was done to the rights of the mortgagee. *Woodside* v. *Adams*, 11 *Vroom* 425.

And just so soon as he turned over the goods to the auditor he took a step which might result in a substantial injury to the rights of the mortgagee.

What the auditor afterwards did is of importance in the case.

If he returned the goods to the mortgagee or paid his claim, no actionable trespass would exist; but if he sold and delivered the goods to third parties, the conversion would, *eo instante*, relate back and constitute the sheriff a trespasser *ab initio.*

There seems to me to be no escape from one of two conclusions. Either the turning over by the sheriff to the auditor was in itself a conversion and equivalent to a sale and delivery by the sheriff, *or* the turning over, coupled with the sale and delivery by the auditor, constituted a conversion and perfected the trespass.

The seizure, the carrying away and the sale by a sheriff under an execution, although done upon different days, constitute the same tort, and may be recovered for in trespass as one trespass. *Browning & Justice* v. *Skillman*, 4 *Zab.* 351.

In that case Chief Justice Green very pertinently remarks : " If the plaintiff had elected to rely upon the levy as the ground of action, the answer would have been that he could recover but nominal damages, for the goods were not removed from his possession. If he had elected to rely upon the sale, the answer would have been that the goods had previously been removed from his possession and that trespass would not lie." *Id.* 354.

So here, if we rely upon the levy, the answer is that a levy and seizure alone constitute no trespass against a mortgagee under the cases of Woodside *v.* Adams, and Atkinson *v.* Hires.

But if we rely upon the sale and delivery alone and sue the auditor, the answer will be, there is no trespass, for the goods were not in your possession when I took them.

And if we join the two, the answer perhaps would be, We are not joint trespassers, and neither of us is guilty of a whole trespass.

Yet such a result is not good reason and cannot be good law.

This mortgagee had a legal property in those goods; that property was taken from him and sold, and delivered to purchasers, and the proceeds retained, at least so far as Fox is concerned.

Now, certainly, he must have a legal remedy. It cannot be that he must be driven to equity for relief.

But without the taking and turning over of the sheriff the auditor could not sell and deliver.

In every other case the taker is held to have converted the property when he put it out of his power to return it. What difference is there here?

I can see none. Is it not clear that when the sheriff put that property into the possession of the auditor, and thus out of Fox's reach, so far, at least, as he was concerned, that the trespass was complete, and especially so if the auditor sold and delivered it, in disregard of Fox's rights, to purchasers?

But if so, then either the judge's subsequent order of nonsuit was error or the testimony was legal, or both.

It seems to me that the evidence was clearly competent to enable the court and jury to determine whether substantial injury had been done to the rights of the mortgagee.

Especially is this so where, as in this case, demand and refusal are proved.

II. It was error to order a non-suit—

1. Because the goods attached were the property of the plaintiff, and the seizing of them by the sheriff was trespass.

2. Because the question of the property in the goods, if not settled in favor of the plaintiff, was a question of fact for the jury and ought to have been left to them for determination.

3. There was no dispute in the case that the plaintiff was in possession of the goods at the time the attachment was levied.

That he notified the sheriff of that fact.

That the sheriff took them out of his custody.

That he turned them over bodily to the auditor.

That the auditor sold them bodily, and not merely an interest therein.

That the goods when sold were delivered to the purchasers.

That none of the cattle were ever redelivered to the plaintiff, and that none of them afterward, came to his possession.

That no part of the proceeds thereof was paid to him by the auditor or received by him.

In short, that he being, if not the owner of the goods, at least the mortgagee thereof in possession, they were taken from his custody by the sheriff, and placed beyond his reach, and not only never returned to him but sold and delivered in whole to purchasers, and the proceeds retained or paid to the plaintiffs in the attachment.

In either view of the case I contend that the facts should have been submitted to the jury, and that they were sufficient to justify a verdict for the plaintiff.

As to the proposition first stated in this article, that the seizure by the sheriff constituted a trespass if the property of the cattle was in Fox, it seems to me so plain that I will not take the time of the court in discussing it. Indeed, Judge Knapp so ruled in his charge to the jury on the first trial.

The second proposition, namely, that the question of title, being one of fact, was for the jury, seems to me to be equally plain.

The third proposition, namely, that Fox being a mortgagee in possession, the sheriff, on a writ of attachment against the property of Blumenthal in favor of a third party, seized the goods, took them bodily out of his custody after notice and

demand, turned them over to the auditor who sold *and delivered* them to purchasers, and did not pay to Fox the proceeds thereof, or any part thereof, by which acts Fox was forever deprived of the goods and their proceeds in whole, seems to me to constitute an estimable trespass quite as much as if the property was in Fox untrammeled by any equity of redemption.

In Miller *v.* Pancoast, decided in the Supreme Court as early as 1861, the plaintiffs held a chattel mortgage on the chattels of Ehman. Under executions in his hands, the sheriff, after notice of the mortgage, levied on and sold the mortgaged goods.

The mortgagee brought trover. In that case the possession was still in the mortgagor.

The court (Whelpley, C. J., reading the opinion,) held: "If the plaintiffs had the title and *the right to the immediate possession, the sale* by the sheriff was a trespass upon the plaintiffs' property in possession, and therefore an unlawful conversion." *Miller* v. *Pancoast,* 5 *Dutcher* 252.

In that case the mortgage was conditioned for the payment of the consideration in sixty days after date. The levy and sale were made before the money came due and while the goods still remained in the custody of the mortgagor. *Id.* 251.

And the court further held, following the rule laid down by the Court of Errors in *Sanderson* v. *Price,* 1 *Zab.* 646, that the mortgagee was entitled to the possession of the property immediately on the execution of the mortgage. *Id.* 252.

In this case there is no dispute that Fox was in possession before the attachment was levied.

Not only were the cattle in his custody, but six of them were actually sold on his account before the levy—one by Williar and five by Westheimer.

If so, then the seizure and sale constituted a conversion and trespass.

Since that case the same question has twice again come under the consideration of the Supreme Court.

In Woodside *v.* Adams, the plaintiff claimed title by virtue of a chattel mortgage, under which he had taken possession.

Afterwards the defendant, under a distress warrant, took possession of the goods.

He had done nothing when the suit was begun but make a formal levy and seizure.

In that case (Depue, J., reading the opinion,) held : " No doubt is entertained that the title of a prior mortgage of chattels is in law as well as in equity superior to that of * * * an officer levying under an execution against the mortgagor. * * * It is equally clear that if the bailiff or officer seize the chattels *and sell them,* in exclusion or defiance of the rights of the mortgagee, such an exercise of dominion over them will be an invasion of the rights of the mortgagee such as will support an action." *Woodside* v. *Adams,* 11 *Vroom* 420.

That this language applies to an action of trespass as well as replevin or trover, see the next paragraph of the opinion.

The court in that case held further that the equity of redemption of chattels remaining in the mortgagor might be levied upon and sold, but in so doing guarded the right of sale very carefully, in the following language : " If the sheriff sells in defiance or exclusion of his rights he may sue for the injury before as well as after the mortgage money is due."

" If the mortgagee is in, or is entitled to immediate possession, and the officer being apprised of his lien sells the *whole property, and not merely the right of the defendant subject to the lien, he becomes a trespasser."    Id.* 429.

" And though the officer pretends to sell only the right, title and interest of the mortgagor, yet if he and the creditor at whose instance he acts assist and encourage purchasers in removing the property, they will be liable to an action as for an actual conversion."    *Id.* 429.

In Atkinson *v.* Hires, the Woodside case was affirmed, and the same court, Beasley, C. J., reading the opinion, say further : " It would have been an infringement upon the rights of the mortgagee for the sheriff to have attempted to sell the prop-

erty at his sale clear of the mortgage or to have permitted the purchaser to take possession of it." *Atkinson* v. *Hires*, 14 *Vroom* 298.

But in this case at bar the chattels were actually taken out of the custody of a mortgagee in possession after notice, were sold bodily and in whole, and were delivered to purchasers, the sheriff first taking a bond of indemnity from the plaintiffs, thus showing that he intended to do just what he did, and that he did it with knowledge. If this does not bring the case clearly within the rules laid down by the Supreme Court, it seems to be difficult to conceive a state of facts that would. But the doctrine for which I am contending does not depend on precedent; it is right in principle. It must be the law that when an officer takes goods out of the possession of a mortgagee in possession on an attachment against the mortgagor in favor of a third person, and either sells them or puts them beyond the reach of the mortgagee, that he is in either case guilty of a trespass for which damages may be recovered in an action of trespass.

The only remaining question is, Does the fact that the goods were sold by the auditor and not by the sheriff alter the case? For this I respectfully refer the court to the argument made under Point I. herein.

III. A non-suit can be ordered only when it is clear that, admitting the truth of the plaintiff's testimony, there is still nothing for the jury to pass upon. *Executors of Bowne* v. *Thompson, Coxe* 2.

But in this case the question of absolute property in Fox was a fact sufficiently in dispute to require the judgment of the jury, and with all due respect I submit the finding of the jury in the first trial was correct on that question, and if I am right in my contention under Point II., then there was sufficient ground to justify a verdict even if Fox was only mortgagee. In either case the judge erred in taking the case from the jury and ordering a non-suit.

For the defendant in error, *William Brinkerhoff*.

August 8th, 1882, Julius Blumenthal was indebted to Martin Fuller & Co., cattle dealers of Philadelphia, in the sum of $2508. The latter on that day caused an attachment to be issued against the property of Blumenthal, out of the Hudson Circuit Court, directed to the sheriff of Hudson county, (Cronan, the defendant,) who, on the same day, at the Jersey City cattle yards, attached the property and estate of the defendant Blumenthal in " fifty-nine cattle appraised at $23 each, $1357." August 9th, 1882, the court appointed Simeon H. Smith, auditor, and ordered the cattle sold as perishable property ; the defendant, August 9th, 1882, delivered the cattle to the auditor.

After the sheriff, Cronan, had delivered the cattle to the auditor, notice of ownership in Fox, the plaintiff, was served upon Cronan. The plaintiff claims that at the time of the attachment, he was the owner of the cattle, having purchased them from Blumenthal, and offered as evidence of his title the receipt dated August 7th, 1882, and order of August 8th, 1882.

Upon the former trial of the cause, the jury rendered a verdict in favor of the plaintiff; a rule to show cause why the verdict should not be set aside was allowed, and the rule was made absolute by the Supreme Court.

Upon the second trial the plaintiff was non-suited.

I. The transaction between Fox and Blumenthal, in its relation to the receipt dated August 7th, 1882, and the order of August 8th, 1882, did not amount to a completed bargain and sale, and it was not intended that it should.

Blumenthal was indebted to Fox in an amount between $3500 and $4000. Blumenthal being financially embarrassed, Fox demanded security for the unpaid account. The terms of that settlement by security are embodied in the following: " *Q.* Tell us how you came to take this bill of sale, P 2? *A.* Several men wouldn't let their stock go and I got uneasy,

and says I, 'Julius Blumenthal, there must be a rumor about you that you are broke;' 'Well,' says he, 'I don't owe anybody anything; all the checks I have given are dated ahead, and I have got enough to pay them all, and I will meet them all.' 'Well,' says I, 'it looks bad, and if your intentions are good to secure me, sell me these cattle and the cattle can go on, and I will take the proceeds, and if it is more than you owe me you can have it, and if it is less you can pay me, and he says all right.'"

II. The conduct of the parties was with respect to a security and not to a sale.

Fox permitted the cattle to remain in possession of Blumenthal.

Notwithstanding the delivery of P 1 and P 2, the cattle were shipped by Blumenthal to Jersey City, and he telegraphed to Westheimer to sell the cattle on his (Blumenthal's) account.

Blumenthal did not intend to sell or mortgage the cattle, but to permit Fox to receive the proceeds of the sale, and thereafter to adjust the account of sale and indebtedness with a view of ascertaining the profits and losses.

This statement agrees with that of Fox.

No credit was given to Blumenthal on the books of account of Fox. Fox produced in court the checks of Blumenthal, which included the entire indebtedness. The checks have continued in his (Fox's) possession from the time of their delivery by Blumenthal, i. e., no credit was given to Blumenthal in consideration of this transaction, and Fox retained the evidences of indebtedness; he retained the checks for which the mortgage (P 2) was given to secure, and as proceeds of the sale of cattle were received, credits were to be given and the checks were not to be delivered till the debt was paid.

The sheriff attached the "property and estate" of Blumenthal in the cattle, whatever that was; he in no manner interfered with the interest of mortgagees or others; he did not sell the cattle, but delivered them to the auditor, as he was

commanded by the court to do so; the auditor sold the cattle, if they were sold; the demand of Fox for the cattle was served upon defendant Cronan after the delivery to the auditor.

If the transaction was not an absolute sale or P 2 is a mortgage, then the sheriff had a right to attach the interest of Blumenthal in the cattle and take possession of them. *Woodside* v. *Adams*, 11 *Vroom* 417; *Atkinson* v. *Hires*, 14 *Vroom* 297.

III. Fox was the agent of Blumenthal in the sale of the cattle, and was legally bound to account to Blumenthal. The transaction between Blumenthal and Fox was "made in trust for the use of the person making the same," and is void as against creditors. *Rev.*, p. 446, § 11.

As to what Auditor Smith did after receiving the cattle from the sheriff, is immaterial, and the court properly rejected the evidence of Smith on that point.

This is a suit against Cronan for his action, and not for what Smith, as auditor, did.

VAN SYCKEL, J. Fox, the plaintiff, held in pledge fifty-nine cattle to secure the sum of $4000, due to him from one Blumenthal, the owner of the cattle.

While these cattle were in the possession of Fox, another creditor of Blumenthal caused an attachment to be issued against him, directed to Cronan, the sheriff of Hudson county.

The writ of attachment was placed by the sheriff in the hands of Martin, his special deputy, to be served. When Martin served the writ notice was given to him of the claim of Fox upon the cattle. The sheriff took a bond of indemnity from the plaintiff in attachment, and took possession of and held the cattle under said writ. In his return to the writ he certified that he had attached the fifty-nine cattle, appraised at $23 each, without making any reference to the claim of Fox, the pledgee. The writ was served on the evening of August 8th, 1882, and on the next day an auditor was

appointed in the attachment proceeding, and the sheriff put the cattle in the possession of the auditor on the same day.

Thereupon Fox, the pledgee, brought suit against the sheriff to recover his damages for the taking of the cattle from him.

The first question presented by the case is, whether a sheriff by virtue of an execution or attachment in his hands against the pledgor or mortgagor of personal chattels can remove them from the actual custody of the pledgee or mortgagee, and hold possession of them without paying or offering to pay the debt for which they were pledged.

It is conceded that while the mortgagor retains possession of goods they may lawfully be seized by virtue of an execution against him, and his interest in them sold to satisfy the judgment debt.

*Woodside* v. *Adams*, 11 *Vroom* 417, is relied upon to support the more advanced doctrine that the goods may be taken out of the possession of the pledgee or mortgagee by the officer under the authority of a writ against the pledgor or mortgagor.

In that case the property involved consisted of furniture in a hotel. The mortgagee took possession of it on the 22d of August, but did not remove the goods—he merely inventoried, appraised and advertised them for sale on the 6th of September then next.

On the 4th of September a landlord's warrant was delivered to the defendant, and executed by him by a levy on the furniture. The defendant did not remove or sell them before the replevin was sued out. The Supreme Court, in a very able opinion, in the conclusions of which, as applied to the facts of that case, I fully concur, held that replevin would not lie by the mortgagee.

The court said that nothing whatever had been done by the defendant, so far as disclosed by the case, which interfered with the plaintiff's rights under the mortgage—that the plaintiff might have proceeded with his sale under the mortgage without any interference or embarrassment consequent upon

the execution of the distress warrant, leaving to the landlord the surplus goods that remained after the mortgage debt was satisfied.

The rule formulated by the court "permitted the officer to take such possession only as would enable him to make a legal sale under his execution," and the court said that "this would be consonant with public policy, and consistent with sound legal principles, provided that, in doing so, no substantial injury be done to the interests of· the mortgagee."

With this limitation upon the right of the sheriff to interfere with the estate and possession of the mortgagee, the doctrine announced in Woodside v. Adams will not be controverted.

But I cannot agree to the proposition that under authority of a *fi. fa.* or an attachment an officer can wrest personal property from a pledgee, or mortgagee in possession, and withhold it from him until it is sold under the legal process. Such a rule would be contrary to sound principle, and is without authority to support it. The mortgagee is entitled to the possession ; it is an essential part of his estate in the goods, without which he would be unable to exercise the right, with which the law invests him, to sell the property for the satisfaction of his mortgage debt. He has a right, within reasonable limits, to select the time and place of sale, and to impose the conditions. This may be of vital importance to the recovery of his demand. He can neither be deprived of this right which is vested in him, nor postponed in the enjoyment of it.

The mortgagor could not deprive him of his possession. The sheriff or creditor, who succeeds by operation of law to his rights, can be in no better position than the mortgagor himself. He may take for the satisfaction of the judgment debt the interest of the mortgagor, but he cannot impair the estate of the prior for the benefit of the subsequent creditor.

The right of the sheriff to take the goods from the actual possession of the mortgagee imports the right to maintain and withhold the possession until he is required to sell them by

the exigency of his writ. It frequently occurs that a stay of execution is ordered pending further litigation after a levy is made.

During all this period the mortgagee might be deprived of his possession, while interest upon his debt would accumulate and the value of his security become impaired. For the consequent injury he would be remediless, if it be conceded that the sheriff may lawfully assert his right to the actual possession.

A further consequence would be that if, after sale under the execution, the officer failed to subject the goods to the power of the mortgagee to resume possession, he would be guilty of a tort, for which he alone and not his sureties would be responsible. For the trespass of the officer the bondsmen are not held. The officer might be without pecuniary ability to respond in damages.

The transfer of the title subject to the mortgage by the act of the mortgagor, cannot enlarge his estate, nor can it diminish that previously granted to the mortgagee. Who will assert that such vendee can legally maintain the right to deprive the mortgagee of his possession, and how can he who holds under the legal process be on a better footing? The recognition of this right in the latter would as clearly appropriate the property of the mortgagee to pay the debt of another for which he was in nowise responsible, as would the former.

It is true that there is a line of English cases holding that the interest of one of several partners or joint owners of personal property may be seized and sold under execution, but such partner has an equal right to present possession with all his associates. Under such sale the purchaser can acquire only the share of the execution debtor in the surplus of the partnership effects, after all the firm obligations are discharged. He becomes tenant in common with the other partners and takes *cum onere*.

The English doctrine of the right to levy was recognized in this state in *Brown* v. *Bissett*, 1 *Zab.* 46, but Mr. Justice Carpenter, in delivering the opinion of the Supreme Court,

Fox v. Cronan.

took the precaution to say that "it was not a question as to the mode of levy in such case, and that it was not necessary to settle whether the sheriff may take the joint property out of the hands of the other partners on an attachment against one for his separate debt."

If the mortgagor's interest in mortgaged chattels in the lawful possession of the mortgagee cannot be appropriated to the payment of an execution without asserting the right of the sheriff to take actual possession, then I would unhesitatingly say that the mortgagor's title is not the subject of levy and sale under a *fi. fa.*

This is the rule in New York and in some of the other states, where the subject is not regulated by statute.

No justification can be found for stripping the mortgagee of contract rights, of which he is in the enjoyment, in order to establish a subsequent creditor, who can justly succeed to nothing more than his debtor has, in a better position than the debtor himself occupies.

In my judgment the interest of the mortgagor of personal property in possession of the mortgagee can be transferred by levy and sale under execution, without impairing the rights of the mortgagee.

The rule of the common law that a levy under execution imports an actual taking into the possession of the sheriff, and that to constitute a valid levy the property levied upon must be in the manucaption of the officer, would interpose an insuperable obstacle in the way of subjecting the mortgagor's estate to execution and levy, where the mortgagee is in possession. Under the settled law of this state the necessity of thus trenching upon the vested rights of the mortgagee is obviated.

Not only is the sheriff not bound to take into actual possession, or to remove goods levied upon, but he may make a valid levy from an inventory furnished by the defendant, without seeing the property. He may, therefore, levy upon the right, title and interest of the mortgagor, and his con-

structive possession of that interest will be consistent with the actual, continued possession of the goods by the mortgagee.

Under such levy the officer may advertise the interest of the mortgagor in the property for sale, and on the day of sale he may require the mortgagee to expose the goods to the view of bidders, and enforce obedience to that duty on the part of the mortgagee by virtue of his execution and levy.

This will not necessitate the removal of the property from the possession and control of the mortgagee nor deprive him of any substantial right.

The right to levy imports a right to see the goods. The mortgagor would have that right, if he wished to show the property to one who desired to buy subject to the lien of the mortgage. Otherwise the right to sell would in most cases be futile. The denial of this right would deprive him of the beneficial use of his property, and its refusal would constitute a conversion of his interest by the mortgagee, for which he might maintain an action against him, and recover the value of the goods in excess of the debt for which they were in pledge. The sheriff, armed with a writ of execution or attachment, would logically succeed to the same right, to enable him to make an appraisement of the debtor's interest, and a sale thereof in obedience to the command of the writ or the order of the court.

The right of the sheriff to require the mortgagee to permit him to expose the chattels to sale must be incident to that he has to see them for the purpose of making a levy, and his process must be as potent to enforce the one right as the other. This would involve no disturbance of the mortgagee's possession.

To the suggestion that a writ of attachment could not be made available against the interest of a mortgagor in goods in possession of a non-resident mortgagee in transit across the state before they passed out of our jurisdiction, the answer is two-fold.

*First.* There would be manifest injustice in constraining the non-resident mortgagee who has the prior and paramount

right to leave his property in the charge- of a forum which may be remote from his. domicile for the benefit of a creditor who can take only subject to his title, unless the mortgage debt is tendered.

*Secondly.* If the attaching creditor desires the sheriff to take actual possession of the property he must pay or offer to pay the mortgage debt.

If there is a well-grounded apprehension that a resident mortgagee may remove the goods beyond the jurisdiction in which they are seized, he may be enjoined at the instance of the subsequent creditor. Such unlawful removal would constitute a conversion on the part of the mortgagee for which he would be liable to the sheriff in an action of trover.

Such is the doctrine which prevails in the Pennsylvania courts.

In *Srodes* v. *Caven*, 3 *Watts* 258, the court said that. " goods pawned or gaged for a debt or leased for years cannot be taken in execution, but the sheriff may sell the goods- pawned or leased subject to the rights of the lessee or pawnee. But although the sheriff has the right to sell he cannot seize them, because the pawner or lessor has no present right to possession. It is reasonable that whatever interest the debtor himself .may sell the sheriff may sell, although it may not be capable of actual seizure or delivery."

The language of Mr. Justice Strong in *Welsh* v. *Bell,* 32. *Penna. St.* 12, is to the same effect : " The sheriff may levy upon and sell the interest of the debtor in personal property although the immediate possession and right to it be in another. If the debtor have bailed or demised the goods, this interest may be seized and sold, subject, however, to the rights of the bailee or lessee. But the possession of the latter may not be disturbed. The levy can only be on the interest of the debtor. A levy upon the thing itself disturbs the possession and is a trespass.

In no mode other than that here indicated can the right of the mortgagor in mortgaged chattels in possession of the mortgagee be made the subject of levy and sale under execution or

attachment, without substantially impairing the rights of the mortgagee, which Woodside *v.* Adams concedes it is unlawful to do.

Public policy as well as sound reason manifestly requires that the power of the officer over mortgaged goods in such case shall take no wider range.

Conspicuous injustice will result in many instances if personal chattels may be taken by legal process from one who has the rightful exclusive possession, in order to enforce payment of the debt of another.

The interest of the lessor in goods demised for a term unquestionably is and should be subject to levy and sale under execution, but the right of the sheriff to withhold the leased property from the possession of the lessor cannot be admitted.

Suppose a line of stages to be in possession of the lessee for a term unexpired, can the officer, armed with an execution against the lessor, seize the horses and vehicles and retain them until sale? If so, the lessee is deprived of his property, which consists in the right to the uninterrupted use during the full term for which he holds it.

Deprivation of possession is *pro tanto* destruction of his estate.    For such deprivation, if the sheriff may lawfully take possession, the lessee is without remedy.  Such a doctrine cannot be permitted to prevail without a misconception of correct legal principles.

The sheriff in this case in my judgment became a trespasser by attaching the cattle, and turning them over to the auditor.

There is also another ground upon which the pledgee can clearly support his action.

The sheriff attached, not the interest of the pledgor in the cattle, but the cattle themselves, the interest of the pledgee as well as the interest of the pledgor.

Notwithstanding the notice to his deputy of the pledgee's claim, he took a bond of indemnity from the attaching creditor, levied on the cattle, and certified to the court in his return to the writ of attachment, that he had levied on the cattle

without intimating that the pledgee had any interest in them, and then turned them over to the auditor.

Thereupon the court ordered the auditor to sell the cattle, as if the title of the pledgee was absolute. The order could not, under the return of the sheriff, have been made otherwise.

The auditor sold, in pursuance of the order of the court, the entire property. The sheriff, by the exigency of his writ, was commanded to attach the property of the defendant in attachment, and if by mistake he attached the property of the plaintiff in error, he was a trespasser.

The auditor in attachment was the mere arm of the court to execute its order to sell specific property, and for so doing he is no more liable to respond in damages to the true owner, than the judge who made the order, or a sheriff who executes a writ of replevin.

The mortgagee must look to the sheriff, who wrongfully subjected his estate in the cattle to the process of attachment for the debt of the mortgagor; the sheriff is the trespasser, and he must respond in damages. The sale by the auditor did not divest the mortgagee of his title, and although he might have regained his property from the purchaser at the attachment sale, that fact constitutes no defence to the trespass committed by the officer, and cannot defeat the plaintiff's right of action against him.

The judgment of non-suit was erroneous, and should be reversed.

BEASLEY, C. J., (*dissenting.*) My examination of this case has led me to the conclusion that, on the facts presented at the trial, the plaintiff was properly non-suited.

The defendant, being the sheriff of the county of Hudson, had in his hands a writ of foreign attachment against one Julius Blumenthal, a non-resident debtor, and by virtue of such process levied on certain cattle, and put an officer in charge of them. It appeared at the trial, in an incontestable form, that Blumenthal was the owner of this property, and that he had mortgaged them to Fox, the plaintiff in this

suit, and that the latter, at the time of the seizure, had them. in possession.

According to repeated adjudications in this state the defend-- ant was bound to levy on these chattels, the defendant in the attachment suit having, as mortgagor, an attachable interest in. them, and it therefore follows that unless the officer exceeded or abused his authority in the execution of his writ he has not. rendered himself liable to the present action.

What the sheriff did was this : he levied his attachment according to the statutory formula, put his deputy in charge of the goods, and subsequently turned them over to the auditor, who sold them at auction and delivered them to the respective purchasers. In this conduct of the *sheriff* I have not found anything illegal. It seems to me clear that he was bound to take the chattels in charge, and afterwards to pass them over to the auditor for sale. This was his duty, and his entire duty, for he was in no respect responsible for the subsequent actions of the auditor.

The right of the officer to take into his custody the chattels attached, and thus, for the time, to disturb, measureably, the possession of the mortgagee, appears to follow, as an inevitable consequence, from the establishment of the legal doctrine that. the mortgagor has an attachable interest in the property. That is the settled doctrine in this state, and hence the right of the officer to seize and secure the chattels must exist, unless. we are willing to commit ourselves to the incongruous proposition that the mortgagor's interest is attachable, but that it cannot effectually be attached. And it will be observed that unless the sheriff can seize the things attached, the process, as applied to the class of cases in which the present one takes. rank, is a mere futility. If the officer cannot disturb, for the time being, the possession of the mortgagee, and can do nothing but make a verbal announcement that he attaches the goods, it is obvious that such a procedure is an empty form when the property is *in transitu* from state to state, in charge of the mortgagee. By virtue of such an order of things a person having property in his hands worth $10,000, and on.

Fox v. Cronan.

which he holds a mortgage of $100, could carry it through and from this jurisdiction without the slightest danger of its being meddled with by the creditors of the mortgagor. I see no reason why such property should be thus hedged in against just claims, for the substantial rights of the mortgagee do not require so extreme a measure. If the officer takes possession the mortgagee runs no hazard, for the officer must keep it safely, and after selling the interest of the mortgagor in it he must, after the sale, return it into the possession of the mortgagee, for if he delivers it to the purchasers he renders himself liable. Therefore, the mortgagee is exposed only to a temporary interruption of his possession, which is not an anomalous incident, for it occurs whenever in the administration of the law the ends of justice require it Indeed, it may be said, generally, that whenever there are various interests in personal property requiring adjustment by judicial action, the possession of such property will always be taken from the person having the abstract legal right to it, whenever such course be requisite to the needs of the procedure. A familiar illustration of such a course is that of appointing receivers in a court of equity. Nor is there any hardship in the application of such methods to such a case as the present, for when a person takes a mortgage on personal property he is aware that the creditors of the mortgagor are entitled to require his interest therein to be sold to pay their debts, and therefore the mortgagee cannot reasonably complain of the doing of that which is necessary to effectuate such right. Nor do I think an inability in the sheriff to take the property attached in charge would be in accord with ordinary procedures, for no instance is recalled in which such inability exists when an officer has put a lien on property by force of his writ for the purpose of ultimately subjecting it to sale. And it is also observable that if the right of exclusive possession in the mortgagee be paramount to an attachment, it will likewise be paramount to an execution founded on an ordinary judgment, the result being that after a levy under such latter process the officer could not take the property into his possession. Nor

is it apparent how, in view of the theory contended for by the plaintiff, the interest of one tenant in common of a chattel could be taken into custody either by virtue of an attachment or an execution. Therefore, it seems to me, upon the general rules of the law, that the officer by force of a writ of execution or attachment against a mortgagor, must take charge of the articles levied or attached in order to bring them to a sale.

But if there were any doubt on this subject, tested by ordinary legal principles, that doubt I think would be dissipated by the directions contained in the Attachment act itself. By the twelfth section of that statute it is provided in these words: "That the goods, chattels and personal estate so attached shall remain in the safekeeping and care of the said officer in order to answer and abide the judgment of the court," &c. *Rev., p.* 44. This language is general, and it embraces every case in which chattels are attached, and it is not perceived how its effect is to be restrained by the court so as to except from its operation the property of a mortgagor. Consequently, my conclusion on this first head is that the sheriff was justified in putting his deputy in charge of these chattels. Nor have I observed anything which indicates that in making this levy he fell into any illegality. The act requires that the officer shall go to the house or lands of the defendant, or to the person or house of the person in whose custody or possession the defendant's property or estate may be, and then and there declare, in the presence of a credible person, that he attaches the rights and credits, moneys and effects, goods and chattels, &c., of the defendant, at the suit of the plaintiff named in the writ, and then and there make an inventory and appraisement thereof. This is the course of law enjoined on the sheriff in all cases, and this was the course pursued in the present instance. The officer conformed to the statute. He could not lawfully do anything more, for he would not have been justified in declaring that the defendant in the writ was the mortgagor of the property, and that he attached only such an interest. Such a practice would be attended with very great inconvenience, and might seriously impair the rights of

the plaintiff in the proceedings. The act gave the formula, and the sheriff cannot be said to have been guilty of misfeasance, because he took it strictly as his guide.

If, then, the defendant was not a wrong-doer from the mode of making his levy, the only remaining question is, whether he became such by the doing, subsequently, of any illegal act. What he did was to hand over, shortly after his levy and before a sale, the property attached, to the auditor appointed in the · case. The statute says the goods are to remain in the safekeeping and care of the officer in order to abide the judgment of the court, and consequently, in this case, in strictness, the delivery to the auditor should not have preceded the order to sell. But a premature delivery of this sort would not render a sheriff liable, provided the goods so delivered were held by the auditor so as to be subject to the order of the court to sell. During the *interim* between the passing the goods to the auditor and the order to sell, the sheriff would be responsible for the safety of the chattels, and the auditor, for that period, would be his special bailee. To such a course of proceeding the parties in interest cannot complain, for if the goods are not forthcoming at the requisite juncture, the sheriff and his sureties must make good the loss.

The sole remaining question therefore is, whether, after the making of the order for sale, the responsibility of the sheriff in anywise continues. Nothing is observed in the act, or in the nature of the proceeding, that appears to lend any support to the affirmative of this proposition. After the auditor has been ordered by the court to make sale of the chattels he must of necessity take possession of them, and the sheriff has no duty assigned to him in that part of the proceeding. The statute merely requires the sheriff to safely keep the property attached " in order to answer and abide the judgment of the court," and if he has them to transfer to the auditor at the time of the order for sale, and transfers them to the auditor, he has fully discharged that function. Nothing is perceived either in the words or spirit of the act that lends even a color to the idea that the sheriff is to supervise, or in any respect

to intermeddle with the sale of the auditor.   In fact, at that stage of the procedure, the property is under the control of the court, and for the sheriff to attempt to control the proceedings at that stage would amount to a contempt.   My conclusion from these considerations is, that the sheriff, by submitting to the judicial order for a sale, and by leaving the matter to the auditor, cannot be treated as a wrong-doer.

Nor do I think this course of practice is unreasonable with respect to its effect upon the interests of the mortgagee.   His right is not left without substantial safeguards.   In the first place no sale that the auditor can make will displace or impair his title ; immediately upon the completion of a sale of any article he is entitled to take possession of it, and if such possession be contested an action of replevin will afford a complete remedy.   Or his simpler course is to apply to the court directing the sale for an order on the auditor to the effect that after the sale, he, the mortgagee, shall be restored to the possession.   Such an order could not be refused, and it would be a perfect protection.   In addition, the mortgagee can file his bill in chancery requiring the property to be sold in payment, in the first place, of the debt due to him.   These remedies would appear to afford ample security to the mortgagee.

But it was urged on the argument that the sheriff, before levying the attachment, took a bond of indemnity, and thereby manifested an intention to proceed adversely to the title of the mortgagee.

How, from the premises stated, a hostile purpose is to be inferred is not apparent.   As a prudent officer he might well take an indemnification whether he intended to attach the chattels as the property of a mortgagor or of an absolute owner.   But the intention of the officer is of no consequence whatever, for he is answerable only for his acts.   If he had the right as against the mortgagee to take charge of the goods and to hand them over to the auditor, and he did those acts and nothing more, it seems out of the question to hold that he is liable to an action for such a course of legal conduct.

But, further than this, I cannot but think that the transac-

tion which embraced the giving of this bond of indemnity, instead of being inimical to the defence in this case, is entirely destructive of the plaintiff's right to sue. These were the facts : The plaintiff, when the sheriff attempted to levy the attachment, claimed to be the absolute owner of the property, and served a written notice to that effect. It was against that claim that the plaintiff in the attachment gave his bond, and ordered the sheriff to proceed. It does not follow that such a step would have been taken if the plaintiff in this suit had claimed to be mere mortgagee, thus declaring the truth. The claim of absolute ownership, if submitted to, would have defeated the attachment proceeding *in toto*, and it was against that claim that the plaintiff in that suit took his stand ; by such contest and the giving of his bond he altered his position, and it is not perceived how the plaintiff in this case can be permitted to base an action on the admitted ground that the claim so made by him, and which has thus been acted upon, was not true. It seems to me that upon settled principles he is estopped from such a course. By a recovery in the present action the plaintiff is allowed, in substance, to say to the defendant, I assured you, in solemn form of law, that I was the absolute owner of these cattle, you were bound to treat that statement as false, and, in some inscrutable manner discover that I was mortgagee and treat me accordingly. .

In fine, the plaintiff's action appears to me to be founded on one or more of the following propositions, viz. :

*First.* That the officer executing an attachment against chattels under mortgage cannot take charge of them according to the exigency of his writ when he finds them in the possession of the mortgagee.

*Second.* That a mortgagee may serve such sheriff with a written notice falsely claiming an absolute ownership in such chattels, and in an action against the officer may himself prove the falsity of such notice, and may recover on the ground that he is mortgagee and not absolute owner.

*Third.* That having put in such false claim he may treat the officer as a wrong-doer, because he failed to discover under

such circumstances that he was mortgagee, and failed to protect his interest to that extent.

*Fourth.* That the sheriff after executing an attachment, and after delivering the chattels attached to the auditor, who has been ordered to sell them, is responsible, if after such sale the auditor does not return the property to a mortgagee, who has not claimed to be such, but has claimed to be absolute owner.

As I cannot agree to any of these propositions I am constrained to vote to affirm the present judgment.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, SCUDDER, COLE, PATERSON. 5.

*For reversal*—THE CHANCELLOR, DIXON, MAGIE, REED, VAN SYCKEL, BROWN, CLEMENT, MCGREGOR, WHITAKER. 9.